CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 14 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL GEMAEHLICH, | Civil Action No. 7:12cv00263 |
| Plaintiff, | |
| | **MEMORANDUM OPINION** |
| v. | |
| OCTAVIA L. JOHNSON *et al.*, | |
| | By: Samuel G. Wilson |
| Defendants. | United States District Judge |

This is an action by plaintiff Michael Gemaehlich pursuant to 42 U.S.C. § 1983, with supplemental jurisdiction asserted under 28 U.S.C. § 1367 over state-law assault and battery claims, against Roanoke City Sheriff Octavia L. Johnson and deputies Kenneth Ferrell, Frank Porter, Jennifer Callahan, and Stephen Southerland, all in their official and individual capacities, alleging that the deputies used excessive force against Gemaehlich while he was a pretrial detainee at the Roanoke City Jail. Johnson and the deputies have moved to dismiss Gemaehlich's complaint for failure to state a plausible § 1983 claim to relief. The court finds that Gemaehlich has alleged sufficient facts to support an excessive-force claim against the deputies in their individual capacities. However, the court dismisses the individual-capacity claims against Johnson as insufficiently pled, dismisses all official-capacity claims as barred by the Eleventh Amendment, and dismisses the state-law assault and battery claims as barred by the one-year statute of limitations that applies to Virginia pretrial detainees' assault and battery claims.

I.

In the light most favorable to Gemaehlich, the facts are as follows. On the night of November 16, 2010, officers arrested Gemaehlich and took him to the Roanoke City Jail. While

he was standing at the docketing counter, Deputies Ferrell and Porter allegedly threw Gemaehlich onto the counter and held him down by his neck. Ferrell, Porter, and Callahan then handcuffed Gemaehlich and escorted him to a cell. Callahan removed a mattress from the metal bench inside the cell, and the deputies took Gemaehlich into the cell and threw him face down onto the bare metal bench. Gemaehlich alleges that he remained handcuffed while Ferrell, Porter and Callahan kicked and punched him on his head, back, and arms. Deputy Southerland allegedly participated in the beating or watched it occur without intervening. Gemaehlich alleges that he shouted for help and for his assailants to stop, but that the beating continued for some time. Eventually, the deputies removed Gemaehlich's handcuffs and left him alone until the next morning, when he was released on bond. Gemaehlich alleges that he suffered a fracture to his right fifth metacarpal and numerous contusions and abrasions.

Gemaehlich filed his first complaint on June 14, 2012, against "Deputies John Does" and "Deputies Jane Does." Gemaehlich filed an amended complaint on August 10, 2012, naming Sheriff Johnson and identifying Ferrell, Porter, and Callahan as three of the four John Does. On November 13, 2012, Gemaehlich filed a second amended complaint, identifying Southerland as the final defendant. That third version of the complaint also contains a recitation of similar complaints against the Roanoke City Sheriff's Department. (See Am. Compl. 7–8, ECF No. 30.) Gemaehlich seeks a total of $30 million in compensatory and punitive damages, as well as attorney's fees and costs.

## II.

Deputies Ferrell, Porter, Callahan, and Southerland have moved to dismiss the individual-capacity excessive-force claims against them on the ground that the allegations in the complaint are ambiguous, conclusory, and boilerplate. The court disagrees, finds that Gemaehlich's

2

complaint contains enough facts to state a facially plausible claim to relief against the deputies, and denies the motion to dismiss.

The Due Process Clause of the Fourteenth Amendment governs "'excessive force claims of a pretrial detainee [or arrestee].'" Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008) (alteration in original) (quoting Young v. Prince George's Cnty., Md., 355 F.3d 751, 758 (4th Cir. 2004)). To succeed under the due-process analysis, a plaintiff must show that the officer "'inflicted unnecessary and wanton pain and suffering.'" Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). In analyzing these claims, courts focus on "whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Orem, 523 F.3d at 446.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, the claimant's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiffs must offer enough facts "to nudge[] their claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570, and from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is entitled to relief, Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 679.

3

Here, crediting his version of events, Gemaehlich has stated a plausible excessive-force claim against the deputies in their individual capacities. He alleges that the deputies threw him, handcuffed, onto a metal bench and then punched and kicked him repeatedly while he shouted for help. Taken as true, those allegations describe "wanton" and "unnecessary" conduct rather than "a good faith effort to maintain and restore discipline." Orem, 523 F.3d at 446. The court therefore finds that Gemaehlich has nudged his claims across the line from conceivable to plausible and denies the deputies' motion to dismiss Gemaehlich's individual-capacity excessive-force claims.[1]

## III.

Gemaehlich claims that Sheriff Johnson is liable in her individual capacity under § 1983 for the deputies' alleged conduct. Sheriff Johnson argues that the court should dismiss the individual-capacity claim against her because Gemaehlich has failed to allege facts plausibly establishing supervisory liability. Because Gemaehlich has done little to render the claim plausible other than bootstrap previous complaints about detainee treatment at the Roanoke City Jail, the court agrees with Sheriff Johnson and dismisses the claim.

Because there is no respondeat superior liability under § 1983, Gemaehlich seeks to hold Sheriff Johnson personally liable by suggesting there was a pervasive and unreasonable risk of constitutional injury because of earlier instances where deputies used excessive force, and that

---

[1] The defendants claim qualified immunity from Gemaehlich's individual-capacity claims. "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Campbell v. Galloway, 483 F.3d 258, 270 (4th Cir. 2007) (citations omitted). "A right is clearly established if the contours of the right are sufficiently clear so that a reasonable officer would have understood, under the circumstances at hand, that his behavior violated the right." Bailey v. Kennedy, 349 F.3d 731, 741 (4th Cir. 2003).
"[T]o survive a qualified immunity-based 12(b)(6) motion to dismiss [Gemaehlich] must have plausibly alleged in his complaint that his constitutional rights were violated." Tobey v. Jones, --- F.3d ---, 2013 WL 286226, at *5 (4th Cir. 2013). Here, Gemaehlich has done so. But cf. id. at *10 (noting that defendants "can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage").

Johnson knew of that risk and failed to act under circumstances that give rise to an inference of deliberate indifference or tacit authorization of the conduct. The starting point, therefore, is the actual application of force. As the court has noted, the court's analysis of a pretrial detainee's excessive-force claim focuses on whether the force alleged to be excessive was applied in a good-faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. Pleading an excessive force claim should not be, and is not, onerous. Indeed, the court has already concluded that Gemaehlich's brief recitation about his encounter with the deputies is sufficient as to those deputies. He needed only plead sufficient factual matter for the court to conclude contextually, for example, that he already was restrained at the time the deputies applied substantial, injurious force.

But it is not sufficient to allege simply that other pretrial detainees before Gemaehlich were injured or even died in altercations at the jail, or to call the application of force in other instances "assaults" without supplying the contextual details that would permit the court to undertake its own independent analysis of the claim that excessive force was in fact used. Those kind of threadbare recitals do not "show" prior instances of excessive force, but rather only allege without showing prior instances of excessive force. But even if Gemaehlich alleged sufficient facts for the court to make its own independent assessment of the claim that Johnson's deputies used excessive force previously, Gemaehlich still must allege sufficient facts for the court to conclude that he has "shown" that Johnson knew of a pervasive and unreasonable risk of constitutional injury and failed to act under circumstances that give rise to an inference of deliberate indifference. Here he alleges "upon information and belief," but offers no specific facts showing, that the deputies had "malicious" tendencies, that Sheriff Johnson knew it, and that she failed to take corrective action. See, e.g., Skillstorm, Inc. v. Elec. Data Sys., LLC, 666

5

F. Supp. 2d 610, 619–20 (E.D. Va. 2009) (holding that the plaintiff's allegations upon "information and belief" were "exactly the type of pleading that Iqbal and Twombly sought to foreclose"). Accordingly, the court will dismiss the claim.[2]

## IV.

The defendants have moved to dismiss Gemaehlich's official-capacity claims because the Eleventh Amendment precludes the court from hearing them. Because an official-capacity claim is simply another way of pleading an action against the entity that employs the officer, and because the court concludes that the Office of Sheriff in Virginia is a state office for Eleventh Amendment purposes and is immune from suit in federal court in suits for damages under § 1983 and state law, the court grants the defendants' motion.

An official-capacity claim against an individual officer is simply "'another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Stickley v. Sutherly, 667 F. Supp. 2d 664, 672 n.7 (W.D. Va. 2009) (quoting Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)). "The Eleventh Amendment limits the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities," Kitchen v. Upshaw, 286 F.3d 179, 183–84 (4th Cir. 2002), and "this protection extends . . . to 'arm[s] of the State,'" Cash v. Granville Cnty. Bd. of Educ., 242 F.3d 219, 223 (4th Cir. 2001) (alteration in original) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). However, "Eleventh Amendment immunity does not extend to mere political subdivisions of a State such as counties or municipalities." Kitchen, 286 F.3d at 184. The question here is whether the

---

[2] Where the court has gone beyond the bare allegations and looked to the public record to see what could be gleaned by the court (and presumably Sheriff Johnson), nothing supports an inference of knowledge.

6

Office of the Sheriff in Virginia is a state office for Eleventh Amendment purposes or whether it is municipal in character. The court concludes the former.

There is considerable authority holding that the Eleventh Amendment precludes § 1983 official-capacity suits against Virginia Sheriffs and their deputies because they are state, not local, officials. See, e.g., Smith v. McCarthy, 349 F. App'x 851, 858 n.11 (4th Cir. 2009) ("[T]he district court did not err in dismissing the [plaintiffs'] claims against [the deputy sheriffs] in their official capacities, as they are afforded immunity by the Eleventh Amendment."); Bland v. Roberts, 857 F. Supp. 2d 599, 609–10 (E.D. Va. 2012) ("[A] suit against the Sheriff in his official capacity is in fact a suit against the State. Unless the State has abrogated or waived immunity, Eleventh Amendment protection applies."); Snead v. Alleghany Sheriff Dep't, No. 7:09cv00198, 2009 WL 2003399, at *1 (W.D. Va. July 7, 2009) ("In Virginia, federal district courts have consistently held that a sheriff and a sheriff's department are 'arms of the Commonwealth of Virginia and that they, therefore, are entitled to invoke the defense of immunity from suit pursuant to the Eleventh Amendment.'").[3] The court sees no reason to

---

[3] See also Francis v. Woody, No. 3:09cv235, 2009 WL 1442015, at *4 (E.D. Va. May 22, 2009) (finding that "in Virginia, a lawsuit against a sheriff in his official capacity is actually a lawsuit against the State," and a Virginia Sheriff in his official capacity is immune under the Eleventh Amendment from liability for damages and not a "person" under § 1983); Botkin v. Fisher, No. 5:08cv00058, 2009 WL 790144, at *5 (W.D. Va. Mar. 25, 2009) (finding that "in Virginia, suits against a Sheriff in his official capacity are suits against the state" and barred by the Eleventh Amendment with respect to claims for monetary damages); Davis v. Cnty. of Amherst, No. 6:07cv00017, 2008 WL 591253, at *1 (W.D. Va. Mar. 3, 2008) (finding that in Virginia a Sheriff and the Sheriff's department are "considered a part of the State for 11th Amendment purposes," and not a "person" subject to liability for damages under § 1983); Carpenter v. Sheriff of Roanoke City, No. 7:05cv00667, 2006 WL 1699730, at *1 (W.D. Va. June 12, 2006); Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997) (finding a suit against a Virginia Sheriff in his official capacity barred by the Eleventh Amendment); Blankenship v. Warren Cnty., 931 F. Supp. 447, 449 (W.D. Va. 1996) (finding that "the Sheriff and the Sheriff's Department [in Virginia] are arms of the state and cannot be held liable for monetary damages under § 1983 because they are entitled to Eleventh Amendment immunity").

In Cash v. Granville Cnty. Bd. of Educ., 242 F.3d 219 (4th Cir. 2001), the Fourth Circuit Court of Appeals explained the factors that figure in the Eleventh Amendment arm-of-the-state analysis. Id. at 223–24; see also United States ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp., 681 F.3d 575, 580 (4th Cir. 2012). Those nonexclusive factors are:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;

7

depart from that authority here. Accordingly, the court concludes that the defendants in their official capacities are entitled to Eleventh Amendment immunity and dismisses Gemaehlich's official-capacity claims against them.

V.

The defendants assert that the one-year statute of limitations in Virginia Code § 8.01-243.2 bars Gemaehlich's state-law assault and battery claims.[4] The court agrees and dismisses Gemaehlich's state-law claims.

The Supreme Court of Virginia has clearly held that the one-year statute of limitations in Virginia Code § 8.01-243.2 applies to a pretrial detainee's assault and battery claims. See Bing v. Haywood, 283 Va. 381, 385–88 (2012); see also Harris v. Virginia, No. 3:07cv701, 2008 WL 1869279, at *5 (E.D. Va. Apr. 24, 2008). Here, the alleged assault and battery occurred on or about November 16, 2010, and Gemaehlich filed his original complaint on June 14, 2012, approximately seven months after the one-year statute of limitations expired.

Gemaehlich argues that the court should not apply § 8.01-243.2 to bar his state-law claims because it would be a "retrospective" application of the statute, in that the Bing court only

---

(2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions;
(3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and
(4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.
Oberq, 681 F.3d at 580. Here, given the long line of cases finding that Virginia Sheriffs are arms of the state for Eleventh Amendment purposes, the court will not belabor those factors.

[4] The Virginia General Assembly has not altered Section 8.01-243.2 since 1999. It states:
No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

recently expressly applied the statute to pretrial detainees' assault and battery claims. Were the court to adopt Gemaehlich's reasoning, the court would be giving a prospective-only application to a decision of the Virginia Supreme Court that *itself* applied "retroactively" to a plaintiff who, just like Gemaehlich, filed suit more than one year but less than two years after the cause of action accrued. This court is not free to ignore the Virginia Supreme Court's application of Virginia law. See, e.g., C.I.R. v. Bosch's Estate, 387 U.S. 456, 466 (1967) ("Since our 1938 decision in Erie R. Co. v. Tompkins, an unbroken line of cases has held that the federal courts must look to state legislation, state decisions, state administrative practice, for the state law that is to be applied.") (citation omitted). Accordingly, the court finds that § 8.01-243.2 applies and dismisses Gemaehlich's state-law assault and battery claims.

## VI.

For the reasons stated, the court denies the defendants' motion to dismiss Gemaehlich's excessive-force claims against the deputies in their individual capacities, but dismisses the remaining claims.[5]

**ENTER:** February 14, 2013.

UNITED STATES DISTRICT JUDGE

---

[5] Gemaehlich also claims that the defendants conspired to violate his civil rights. In the court's view, that claim is no broader than the underlying excessive-force claim.

9