IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL GEMAEHLICH | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 7:12cv263 |
| | ) | |
| v. | ) | |
| | ) | |
| OCTAVIA L. JOHNSON, *et al.* | ) | By: Hon. Robert S. Ballou |
| | ) | United States Magistrate Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion (Dkt. No. 74) to exclude certain testimony of Plaintiff's treating physician, Dr. Brian Torre. Specifically, Defendants ask the Court to prevent Dr. Torre from rendering a causation opinion at trial that Plaintiff suffered a broken wrist because of an assault at the Roanoke City Jail. The Court has considered the oral arguments of counsel, the pleadings filed, and the applicable law. For the reasons stated herein, the motion is **GRANTED in part** and **DENIED in part**. Dr. Torre may give a causation opinion that Plaintiff suffered a broken hand because of an assault, but not that an assault occurred at the Roanoke City Jail as he did not learn that information in of the course of his treatment of Plaintiff.

### Factual Background and Procedural History

Plaintiff filed this action under 42 U.S.C. § 1983 asserting that on November 16, 2010, while a pre-trial detainee in the Roanoke City Jail, Deputies Kenneth Ferrell, Frank Porter, Jennifer Callahan, and Stephen Southerland of the Roanoke City Sheriff's Department beat him

causing personal injuries. Plaintiff has asserted claims for excessive force and conspiracy in violation of his constitutional rights. The defendants vigorously deny that they assaulted or otherwise caused injury to the Plaintiff.

Plaintiff disclosed Dr. Brian Torre, M.D. as a treating physician to testify at trial "to a reasonable degree of medical certainty that the fifth metacarpal fracture [Plaintiff] suffered and present to [Dr. Torre] on November 17, 2010 was the direct result of trauma from the assault Mr. Gemaehlich received at the Roanoke City [J]ail." After taking Dr. Torre's deposition, Defendants filed this motion in limine to exclude that portion of Dr. Torre's expected testimony that attributes a causal relationship between the Plaintiff's broken hand and any incident at the Jail.

## Discussion

Defendants contend that Dr. Torre bases his causation opinion solely on Plaintiff's report of being assaulted in the Jail. Defendants assert that this opinion invades the province of the jury by allowing Plaintiff's treating physician to make a credibility determination that Plaintiff indeed was assaulted while held in the Roanoke City Jail.

"Traditionally, treating physicians have been permitted to express their opinions of causation and prognosis derived from the ordinary treatment of the patient." Hall v. Sykes, 164 F.R.D. 46, 48 (E.D. Va. 1995). That testimony, however, remains subject to the requirements set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See Kristensen ex rel. Kristensen v. Spotnitz, 3:09-CV-00084, 2011 WL 4380893, at *17 (W.D. Va. Sept. 21, 2011) (quoting Gass v. Marriott Hotel Servs., Inc., 558 F .3d 419, 426 (6th Cir.2009)). "Expert testimony is admissible . . . if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue."

Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999) (citing Daubert, 509 U.S. at 592). The inquiry into whether an opinion proffered by an expert is sufficiently reliable is flexible and the district court has broad latitude in the factors it considers; the particular factors applicable in a given case will depend upon the unique circumstances of the expert testimony involved. Id. at 261 (citations omitted). Ultimately, it is the court's duty to ensure that the expert "employ[s] 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Perkins v. United States, 626 F. Supp. 2d 587, 593 (E.D. Va. 2009) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999)).

Dr. Torre, an orthopedic surgeon and hand specialist, first saw Plaintiff to treat his injured hand on November 17, 2010, the day he was release from the Jail. The notes from that examination show that Plaintiff gave a history that the injury occurred when he "was taken into police custody and was reportedly assaulted." (Dkt. No. 87-1). Dr. Torre testified at his deposition that he concluded during his initial examination that Plaintiff broke his hand because of an assault.

> Q: Did you make a scientific determination that a particular event caused Mr. Gemaehlich's injury that you saw on November 17, 2010?
>
> A: If you would ask me on the date I saw him, I would say, yes, to a reasonable degree of medical certainty. He gave me the history that he had been assaulted. A fracture was there. And that would have been my opinion.

(Dkt. No. 74-2). Dr. Torre developed his opinion as to both the nature of Plaintiff's injury and its causation from his physical examination, a review of diagnostic and imaging tests, the records of Plaintiff's prior Emergency Room examination, and the history taken from Plaintiff. Dr. Torre also explained that he considered other possible causes of the injury and that he observed swelling, but no bruising, consistent with a recent injury.

3

Causation opinions of treating medical experts which are based on a physician's physical examination and a patient's self-reported medical history are generally considered admissible. Marzoll v. Marine Harvest US, Inc., 81 Fed. R. Evid. Serv. 174, 2009 WL 4456321, at *37 (D. Me. Nov. 29, 2009) aff'd, CIV.08-261-B-S, 2010 WL 53502 (D. Me. Jan. 7, 2010) (citing, e.g., Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1020-21 (7th Cir.2000) (treating physician's reliance on physical examination and plaintiff's self-reported history did not render causation opinion inadmissible under Daubert; possibility of plaintiff's condition being attributable to different factors was quite susceptible to exploration on cross-examination by opposing counsel); Regalado v. City of Chicago, 40 F. Supp. 2d 1009, 1018-20 (N.D. Ill. 1999) (treating neurologist permitted to testify, to a reasonable degree of medical certainty, based on examination, diagnostic findings, and victim's past medical history, that blows to head caused the plaintiff's stroke, even though he could not completely rule out other possible sources of trauma) (other citations omitted)).

The plausibility of alternative explanations is generally an issue as to weight, not admissibility. "As with all other admissible evidence, expert testimony is subject to being tested by vigorous cross-examination . . . ." Westberry, 178 F.3d at 260 (citing Daubert, 509 U.S. at 596). As other courts have noted in the context of § 1983 litigation, cross-examination is the appropriate means for challenging a medical expert's opinion, and Defendants will have ample opportunity to challenge Dr. Torre's opinion, methodology, data, or sources at trial. See Roguz v. Walsh, 09-1052 TLM, 2013 WL 1498126, at *6 (D. Conn. Apr. 5, 2013) (citing Daubert, 509 U.S. at 596; see also Gayton v. McCoy, 593 F.3d 610, 619 (7th Cir. 2010) ("[A]n expert need not testify with

complete certainty about the cause of an injury. The possibility that [a different cause] was ultimately responsible for [plaintiff's] injury is properly left for exploration on cross-examination."). Thus, "to the extent that the [] [d]efendants protest that the plaintiff's treating physician[] predicated [his] opinion[], at least in part, on the plaintiff's self-reported history, which appears to be the crux of their concern . . . that concern can be adequately addressed through vigorous cross-examination." Marzoll 2009 WL 4456321, at *38 (citing Owen v. United States, No. CIV 07–4014 KES, 2008 WL 5122282, at *3 (D.S.D. Dec. 5, 2008)).

Defendants rely upon three cases for the proposition that a causation opinion based upon a plaintiff's self-report of the source of the injury is inadmissible: Zellars v. NexTech Ne., LLC, 895 F. Supp. 2d 734 (E.D. Va. 2012); Hare v. Opryland Hospitality, LLC, CIV.A. DKC 09-0599, 2010 WL 3719915; (D. Md. Sept. 17, 2010); and Perkins v. United States, 626 F. Supp. 2d 587 (E.D. Va. 2009). These cases are distinguishable.

In Zellars, the plaintiff claimed an injury from an alleged Freon gas leak in their workplace. Zellars, 895 F. Supp. 2d 734. The district court excluded the testimony of the plaintiffs' treating physicians that exposure to Freon gas cause plaintiffs' claimed symptoms. The court found that the doctors were not qualified to offer specialized knowledge regarding toxicology and did not know the factors critical to determining injury from exposure to Freon, such as the duration or intensity of the plaintiff's exposure. Id. at 743-49. The court concluded that the causation opinions offered were, therefore, "speculative at best." Id. at 745, 746, 748. Here, Dr. Torre is a hand specialist and has provided a medical explanation underlying his conclusion that the broken hand occurred close in time to his examination. The nature of this

5

opinion is quite different from that necessary to establish a causal relationship of an injury in a toxic tort suit such as Zellars.

In Perkins, plaintiff motorist brought suit against the United States for injuries suffered in an automobile accident with an FBI employee. Perkins, 626 F. Supp. 2d 587. The court excluded the proffered testimony of the plaintiff's treating physician, Dr. Arthur Wardell, finding that Dr. Wardell "merely adopt[ed] [the] patient's theory of causation," failed to investigate the plaintiff's history and failed to consider other causes of the plaintiff's medical problems such as osteoarthritis. Id. at 592-594. Similarly, in Hare, the court found a treating physician's causation opinion unreliable "[w]here the sole basis for . . . [the] testimony regarding causation [was] the patient's self-reporting." Hare, 2010 WL 3719915, at *5 (citing Perkins, 626 F. Supp. 2d at 592). In Hare, the plaintiff sued a hotel operator claiming that he suffered a facial laceration from a glass bottle during a fight with the defendant's security personnel. The court excluded the opinion that a glass bottle caused the plaintiff's facial laceration because the doctor reached this conclusion based solely on what the plaintiff told him, did not consider any other causes for the injury, and could not identify any characteristics of a laceration made by a glass bottle which would distinguish it from lacerations made by other objects. Id. at *5.

Perkins and Hare likewise do not control the decision here. The courts in those cases found that the treating physicians did not look beyond a plaintiff's self-report of injury. Here, Dr. Torre's opinion that Plaintiff's broken hand occurred during an assault is based on much more information than the history given by Plaintiff during the November 17, 2010 office visit. Dr. Torre conducted an examination and reviewed x-rays of the injured hand. Dr. Torre testified that Plaintiff had an earlier injury to his hand which had healed. He explained his diagnosis and his reasons for concluding that the injury had recently occurred. Dr. Torre also testified as other

possible causes for the injury. While Dr. Torre did not rule out *all* possible causes other than trauma from an assault—and in fact acknowledged that the injury is also consistent with Plaintiff having hit something with his fist—that is not required. "[A] medical expert's causation conclusion should not be excluded because he or she has failed to rule out every possible alternative cause of a plaintiff's illness." Westberry, 178 F.3d at 265 (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 156 (3d Cir. 1999)).

The opinion that Plaintiff broke his hand during an assault is best challenged during cross-examination where Defendants can explore the basis of the opinion and other possible causes of such an injury. By allowing this portion of Dr. Torre's opinion the Court does not permit a credibility determination, as Dr. Torre will not give any opinion that an assault did in fact occur. Dr. Torre testified in his deposition that he accepts as true the history given by his patient. Defendants can, and most certainly will, contest on cross-examination the history provided to Dr. Torre and any opinions based in part on that history.

Defendants next contend that Dr. Torre's conclusion that Plaintiff was involved in an assault at the Jail is based upon information provided to Dr. Torre from Plaintiff's lawyers and is not based upon any information learned through the examination or treatment provided to Plaintiff. Dr. Torre's treatment notes say nothing about where Plaintiff "was reportedly assaulted." Indeed, Plaintiff's counsel presented Dr. Torre with the video of Plaintiff in the Jail only after Dr. Torre had completed his treatment of Plaintiff.

If a treating physician forms an opinion of the causation of an injury during the treatment of a patient then such opinion may be expressed by the treating physician without the necessity of a report under Fed. R. Civ. P. 26(a)(2)(B). Tennessee v. Murphy-Brown, L.L.C., 2:10CV167, 2011 WL 4908843 (E.D. Va. Sept. 27, 2011) (citing Hall v. Sykes, 164 F.R.D. 46, 48

7

(E.D.Va.1995)). "However, if . . . a treating physician[] is specially retained or employed to render a medical opinion based on factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert written report. Hall, 164 F.R.D. at 48-49. Plaintiff disclosed Dr. Torre as a treating physician and did not provide a report pursuant to Fed. R. Civ. P. 26(a)(2)(B). (Dkt. No. 74-1). As such, he should not be permitted to testify as to any information he did not learn in the course of his treatment of Plaintiff, particularly if that information was gained in preparation for litigation. Cf. Kirk v. Bostock, 09-15018, 2012 WL 954716, at *2 (E.D. Mich. Mar. 21, 2012) ("The Court will allow Plaintiff's treating physician to testify and give his opinion on matters regarding causation to the extent that such information was required to treat Plaintiff. Otherwise, the Court will exclude it.").[2]

## Conclusion

Dr. Torre's opinion as to the causation of Plaintiff's injury is admissible to the extent it was formed during the ordinary treatment of the patient and is sufficiently reliable under Daubert—that is, that Plaintiff's hand fracture "was the direct result of trauma from an assault."

Enter: June 6, 2013

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge

---

[2] Even if Plaintiff identified Dr. Torre under Rule 26(a)(2)(B), he could not testify as to where any alleged assault occurred. This testimony is not based upon any "scientific, technical, or other specialized knowledge" and therefore would not aid the jury in resolving the factual issue of whether an assault occurred in the Jail. See Westberry, 178 F.3d at 260 (citing Daubert, 509 U.S. at 592). It is the exclusive province of the jury to determine whether an assault did in fact occur at the Jail. Cf. Hare, 2010 WL 3719915, at *5 (permitting a treating physician to testify as to the timing and nature of an injury, but leaving to the jury the question of whether it was caused by an assault by the defendant.)