CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 21 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL GEMAEHLICH, | ) | |
| | ) | Civil Action No. 7:12-cv-00263 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| OCTAVIA L. JOHNSON, et al., | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

This is an action by Michael Gemaehlich under 42 U.S.C. § 1983 against defendants, Roanoke City Sheriff deputies Jennifer Callahan, Frank Porter, Kenneth Ferrell, and Stephen Sutherland, in their individual capacities, alleging that the deputies used excessive force against him while he was a pretrial detainee at the Roanoke City Jail. Gemaehlich claims the deputies used excessive force while admitting him into the Jail and later while they placed him in a cell. The defendants have moved for summary judgment arguing they used appropriate force under the circumstances at all times and, in any event, are entitled to qualified immunity. For the following reasons, the court will grant summary judgment as to the conduct that occurred during intake and will deny the motion as to the encounter that allegedly took place in the cell.

I.

In the light most favorable to Gemaehlich, the relevant facts are as follows. Officers arrested Gemaehlich and took him to the Roanoke City Jail on November 16, 2010. During intake at the docketing counter, deputies Ferrell and Porter instructed Gemaehlich to keep his hands on the counter in front of him. Gemaehlich disregarded the instruction, removed his hands from the counter, and reached down to lift up his pant leg. In response, deputies Ferrell and Porter pushed Gemaehlich's chest onto the counter and held him down by his neck. A video

recording captured these events. Deputies Ferrell, Porter, and Callahan then handcuffed Gemaehlich and escorted him to a cell. According to Gemaehlich, Callahan removed a mattress from the metal bench inside the cell, and the deputies pushed Gemaehlich's face down onto the metal bench, keeping his hands restricted. While Gemaehlich was immobilized, the deputies struck his head, back, and arms approximately 20 times. Deputy Sutherland observed the alleged attack without intervening. Gemaehlich was screaming and asking why the deputies were beating him. There is no recording of this encounter. Gemaehlich alleges he suffered various contusions and abrasions along with a fracture to his right fifth metacarpal.

## II.

The defendants contend the undisputed facts show they acted reasonably under the circumstances for the purpose of maintaining a safe environment and did not act out of malice or for the purpose of punishing Gemaehlich. The recording of the intake encounter substantiates the defendants' contention and eliminates any disputed material fact as to that aspect of his claim. The court cannot find the same for the encounter in the cell, for which there is no recording and genuine issues of material fact remain.

Summary judgment should be awarded if the moving party points to materials in the record that show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Generally, at the summary judgment stage, the court views the facts in the light most favorable to the nonmoving party. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007). However, facts "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). While the function of the court at the summary judgment stage "is not to determine the truth of the matter or to weigh credibility," the court will not defer to allegations

that are "so utterly discredited by the record" that no reasonable jury could believe such a "visible fiction." JKC Holding Co. LLC v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). For instance, where a video recording captures the conduct at issue, the court will "view[] the facts in the light depicted by the [recording]." Id. at 381.

"Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Campbell v. Galloway, 483 F.3d 258, 270 (4th Cir. 2007) (citations omitted). Qualified immunity requires the court to conduct two inquiries: (1) whether the alleged facts "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right," Id. at 201; and (2) whether the particular right "was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." Merch. v. Bauer, 677 F.3d 656, 662 (4th Cir. 2012) (citation omitted). "A right is clearly established if the contours of the right are sufficiently clear so that a reasonable officer would have understood, under the circumstances at hand, that his behavior violated the right." Bailey v. Kennedy, 349 F.3d 731, 741 (4th Cir. 2003). Qualified immunity applies to excessive force claims, and the issue of excessive force and qualified immunity are not so intertwined as to be "treated as one question, to be decided by the trier of fact." Saucier v. Katz, 533 U.S. 194 (2001). However, it is a discretionary call as to "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223 (2009).

3

The Due Process Clause of the Fourteenth Amendment governs excessive force claims of a pretrial detainee. See Young v. Prince George's Cnty., Md., 355 F.3d 751, 758 (4th Cir. 2004). To establish a use of force as constitutionally impermissible "punishment," the plaintiff "must show either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate non-punitive governmental objection, in which case an intent to punish may be inferred." Morrison v. Jordan, 2010 WL 3783452, *7 (W.D. Va. 2010) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). In the words of the Supreme Court, the plaintiff must show the defendant "'inflicted unnecessary and wanton pain and suffering.'" Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). In analyzing pretrial detainee excessive force claims, courts focus on "whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Sawyer v. Asbury, 2013 WL 4056186, at *6 (4th Cir. Aug. 13, 2013). Although officers are generally not liable for failing to act, a plaintiff may establish bystander liability by showing that the bystander officer: knew that another officer was violating the plaintiff's constitutional rights, had a reasonable opportunity to prevent the violation, and chose not to act. Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002); Willis v. Oakes, 493 F. Supp. 2d 776, 784 (W.D. Va. 2007).

Gemaehlich's claim that the deputies violated his Fourteenth Amendment rights by subjecting him to excessive force at the intake counter does not withstand scrutiny. The video recording, which the Court has reviewed, shows Gemaehlich standing at the intake counter with his hands resting on the surface of the counter and then suddenly reaching toward his pant leg. At that point, the deputies quickly reacted to restrain Gemaehlich, and the incident was soon over. In light of the recording, the court finds it undisputable that the deputies used reasonable

force in a good faith effort to maintain and restore discipline, not maliciously and sadistically for the purpose of causing Gemaehlich harm. Therefore, the court will grant summary judgment as to those events.

Gemaehlich also maintains the deputies used excessive force while placing him in the cell. According to his deposition testimony, the deputies pushed his face into a metal bench, immobilized him, and repeatedly struck him without even the slightest provocation, resulting in contusions and abrasions and a broken finger. All the while, according to Gemaehlich, Deputy Sutherland witnessed the event, and despite having the opportunity, failed to intervene. The defendants' depositions tell a totally different story concerning that unrecorded encounter. The court, however, is not at liberty to choose between these two stories, and, if it occurred, the purposeless beating Gemaehlich describes would have violated the Due Process Clause of the Fourteenth Amendment, and Sutherland had a duty to intervene. Moreover, the deputies are not entitled to qualified immunity for the conduct Gemaehlich describes because the intentional, purposeless beating would have violated Gemaehlich's clearly established constitutional rights, and a reasonable officer would have recognized this violation. The court, therefore, must leave the determination of the disputed material facts of this aspect of Gemaehlich's claim to the jury.

### III.

For the foregoing reasons, the court will grant summary judgment as to the use of force at the intake encounter and deny summary judgment as to the encounter in the cell.

**ENTER:** This 21st day of November, 2013.

_____
UNITED STATES DISTRICT COURT JUDGE